1  MICHELLE R. BARRETT, Bar No. 197280
   PAUL S. COWIE, Bar No. 250131
2  LITTLER MENDELSON
   A Professional Corporation
3  650 California Street, 20th Floor
   San Francisco, CA 94108.2693
4  Telephone:  415.433.1940
   Facsimile:  415.399.8490
5  Email:      mbarrett@littler.com
   Email:      pcowie@littler.com
6
   Attorneys for Defendant
7  BROOKDALE PROVIDENT MANAGEMENT,
   LLC
8
   ROBERT M. LUBIN, Bar No. 055863
9  JOSEPH CAMENZIND, IV, Bar No. 244154
   LAW OFFICES OF ROBERT LUBIN
10 177 Bovet Road, Suite 600
   San Mateo, CA 94402
11 Telephone:  650.638.2331
   Facsimile:  650.638.1005
12 Email:      r1817@aol.com
   Email:      camenzindlaw@yahoo.com
13 Attorneys for Plaintiff
   TAMMY MARSHALL
14

15                    UNITED STATES DISTRICT COURT
16                    NORTHERN DISTRICT OF CALIFORNIA
17

| | |
|---|---|
| TAMMY MARSHALL<br><br>Plaintiff,<br><br>v.<br><br>BROOKDALE PROVIDENT MANAGEMENT, LLC., and DOES 1-25, inclusive,<br><br>Defendants. | Case No. C 08-02172 CW<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>Date:      August 12, 2008<br>Time:      2:00 p.m.<br>Courtroom: 2, 4th Floor |

JT. CASE MANAGEMENT STATEMENT AND
PROPOSED ORDER                                         CASE NO. C 08-02172 CW

The parties to the above-entitled action jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

## JURISDICTION AND SERVICE

**1. Jurisdiction:**

On March 27, 2008, Plaintiff filed her lawsuit alleging (1) Retaliation – Government Code § 12940; (2) Sexual Harassment – Government Code § 12940(j); (3) Failure to Prevent Discrimination and Harassment – Government Code § 12940(k); and (4) Tortious Constructive Discharge in Violation of Public Policy against Defendant in the Superior Court of the State of California in the County of San Mateo. On April 28, 2008, Defendant removed this action from the San Mateo Superior Court on the basis of diversity. The parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff challenged that removal and filed a motion to remand. The Court ruled that the removal was proper and required Defendant to file an amended Notice of Removal, which it did. The Parties now agree that the Northern District of California is the correct jurisdiction and venue for the hearing of this matter. All named parties have been served. The parties do not intend to join additional parties.

## FACTS AND LEGAL ISSUES

**2. The Principal Factual Issues Which the Parties Dispute:**

Defendant Facts:

Plaintiff was employed by Defendant as its Director of Assisted Living at its Woodside Terrace facility. On or about February 2007, Plaintiff alleged that she was sexually harassed by Mr. John Garner, the then Executive Director of the Woodside Terrace facility. Plaintiff alleges that Mr. Garner made inappropriate comments to Plaintiff and on one occasion massaged her shoulders. Within a very short time period (to be confirmed, but it seems it may have been the very next day), Defendant addressed the issues raised by Plaintiff with Mr. Garner and formally issued him a written warning regarding his alleged conduct. Defendant does not admit any of Plaintiff's allegations and specifically does not agree that any of the conduct reported by Plaintiff was sufficiently severe or pervasive to constitute sexual harassment as alleged. On or about April 17,

2007, Plaintiff again complained about Mr. Garner's conduct. The next day, April 18, 2007 Defendant terminated Mr. Garner's employment.

In July 2007 Defendant appointed Ms. Linda Walker as the new Executive Director at Woodside Terrace to replace Mr. Garner. Ms Walker has never met Mr. Garner and has no connection to him. Within a short time of her appointment, Ms. Walker discovered many serious and significant problems with the Assisted Living Department, which was managed by Plaintiff. This ranged from missing paperwork and unsecured narcotics, to disorganized and unworkable conditions. Ms. Walker addressed her concerns with Plaintiff, but Plaintiff refused to accept responsibility for any of these issues.

Subsequent to Ms. Walker's and Plaintiff's conversation about these issues, Plaintiff went on medical leave and never returned, instead choosing to voluntarily resign. Plaintiff was offered and accepted employment, which was due to begin immediately after her resignation, with a local competitor. However, after being introduced to the staff and residents of this competitor, Plaintiff changed her mind and did not continue her employment with the competitor. Shortly thereafter, Plaintiff was offered and accepted another position with a different employer. Plaintiff was employed in that position for a few months before a complaint of harassment was brought against her and she chose to resign instead of being terminated. Plaintiff subsequently moved back to New York.

*The facts as stated are based on Defendant's investigations to date. Defendant reserves the right to change the order and dates of events, and to generally update and modify these facts as more specific details become known to Defendant through the discovery process. Defendant's investigations are ongoing and discovery has not yet started.*

<u>Plaintiff Facts:</u>

In 2006, Defendant BROOKDALE recruited Plaintiff MARSHALL to manage its Redwood City facility at 485 Woodside Road ("Woodside Facility"). The Defendant's Woodside Facility had been under severe scrutiny by the State of California for its many deficiencies as the property was working on a restricted license and was at risk for closure. Plaintiff was hired in essence to "clean up" the Woodside Facility. Plaintiff MARSHALL excelled at her position, as

under her management the Woodside Facility obtained deficiency-free status and its reputation greatly improved. Plaintiff performed so well that she was awarded a $10,000 bonus.

Soon there after, Plaintiff MARSHALL's supervisor John Garner began a pattern of inappropriate conduct and unwanted sexual harassment toward Ms. MARSHALL. Mr. Garner's harassment started off with him initially telling Plaintiff how much he enjoyed working with her, he would state this at least 3 times a day every day, and gradually increased to intolerable levels. For example:

a) During a lunch meeting Mr. Garner revealed to Plaintiff that his father molested his sisters. Such a revelation was inappropriate considering the two did not have any relationship outside work, and had only known each other a few months.

b) Mr. Garner told Plaintiff about a man who was terminated for tricking a female coworker into touching his genitals by placing an item in his pocket and encouraging her to retrieve it at a company Christmas party. Mr. Garner indicated he believed it was ridiculous, and that sexual harassment in the workplace has been taken way out of context.

c) Mr. Garner, who is married, told Plaintiff about an affair he had with a co-worker at a previous job. He said it was a "great" experience and he would do it all over again. He then proceeded to smile and glare at Plaintiff.

d) When Plaintiff left work early because she was sick on one occasion, Mr. Garner called her at home at 10:00 p.m. to ask how she was feeling. Plaintiff believes it was inappropriate to call her at such late an hour.

e) Mr. Garner followed Plaintiff into the stairwell, came up close behind her and started massaging her shoulders with both hands. Mr. Garner stated, "You need a good massage." Plaintiff responded by quickly walking away.

Because of these incidents, and Mr. Garner's inappropriate conduct, Plaintiff developed significant anxiety, and feared confronting Mr. Garner. She actually spent many days crying. For the first time in her life Plaintiff began to suffer from high blood pressure, for which she was placed on

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER    3.    CASE NO. C 08-02172 CW

medication. Plaintiff also began seeing a psychotherapist to help her with her job related stress and anxiety. Mr. Garner's conduct got worse, and began to significantly interfere with Plaintiff's ability to perform her job.

On January 29, 2007, Plaintiff MARSHALL was assisting a 911 unit care for an elderly patient. The unit included a policeman, paramedic and fireman. Plaintiff was the only woman present, aside from the patient. Mr. Garner arrived and approached Plaintiff and started discussing an email. He said the email was from a Hospice company who hired a prostitute to have sex with a dying patient. Plaintiff walked away and told Mr. Garner that she did not want to discuss the email. Plaintiff walked towards the paramedics to answer their questions and Mr. Garner followed her. Plaintiff alleges that Mr. Garner knew she was uncomfortable, but continued discussing the email anyway. The entire scenario was extremely embarrassing for Plaintiff, and inappropriate. About 30 minutes later, Mr. Garner came into Plaintiff's office with a copy of the email. Plaintiff told him she did not want to discuss the email. Mr. Garner asked if he offended Plaintiff, and Plaintiff responded in the affirmative. Mr. Garner also discussed this email with Aleta Walker, who was also offended.

During the first week of February 2007, Ms. MARSHALL and Aleta Walker discussed the email with Mr. Garner's direct supervisor Kari Schmidt (Regional Director of Operations). In addition to the email Ms. MARSHALL discussed Mr. Garner's other inappropriate conduct. Ms. Schmidt promised that she would take care of the situation, but never responded to either Ms. MARSHALL or Ms. Walker.

Because Mr. Garner's inappropriate conduct continued, and neither Ms. MARSHALL or Ms. Walker heard back from Ms. Schmidt both filed a formal complaint with BROOKDALE's confidential Human Resource hotline. One to two days later Ms. MARSHALL received a phone call from Ms. Schmidt, who was angry. Ms. Schmidt asked Ms. MARSHALL why she filed a formal report when she stated she would handle it. Ms. Schmidt was very defensive and made Ms. MARSHALL feel uncomfortable. Ms. Schmidt also contacted and scolded Ms. Walker for filing the complaint with Human Resources.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND
PROPOSED ORDER

4.

CASE NO. C 08-02172 CW

1    Despite the complaints to BROOKDALE's Human Resource department the
2 harassment continued.    In late March, Ms. MARSHALL was on the phone in her office when Mr.
3 Garner entered and closed the door. The two were scheduled to have a conference call with a third
4 party. Mr. Garner brought his lunch, and ate it on her desk while she was on the phone. When he
5 was finished eating, he placed his feet on her desk and his hands behind his head. After the call,
6 Mr. Garner left his dishes, and the mess he made on Ms. MARSHALL's desk. Mr. MARSHALL
7 believes that Mr. Garner did these acts to make her feel inferior, and in response to her complaints.
8 Again, on April 17, 2007, Mr. Garner struck up a conversation with Ms. MARSHALL about his
9 vacations to Florida. Mr. Garner went on to describe an incident in Florida where he fell asleep on
10 the beach, and awoke to be surrounded by naked and bare-breasted women. He was laughing and
11 stated, "he thought he died and went to heaven" Ms. MARSHALL notified Ms. Schmidt, Ms.
12 Cimini and Ms. Clavejo, about the incident and Mr. Garner was removed from the property, and a
13 memo was released indicating he resigned.
14    After Ms. MARSHALL complained to the human resources department the
15 retaliations began. First, Ms. Schmidt regularly began questioning the Woodside Terrace
16 administration about Ms. MARSHALL as if she was looking for something wrong. Ms.
17 MARSHALL was denied a promotion to Executive Director despite her qualifications. She was
18 made acting Executive Director, in title only, but given none of the duties. She was only made
19 acting Executive Director because she had the appropriate licensing and certification.
20    Ms. MARSHALL went on vacation from July 4, 2007 - July 16, 2007. During this
21 period BROOKDALE hired a new Executive Director, Linda Clark Walker. Ms. Walker worked
22 directly under Kari Schmidt. From then on Ms. Clark began a pattern of constant abuse, and open
23 hostility toward Plaintiff. Plaintiff alleges that this was done in retaliation for her complaints
24 regarding Mr. Garner, and that Ms. Clark purposely wanted to push Ms. MARSHALL out of her
25 position. Ms. Walker told several BROOKDALE employees that she did not like Ms. MARSHALL,
26 even though she never met her. When Ms. Walker continued her campaign to annoy, and harass
27 Ms. MARSHALL. (1) Ms. Walker refused to authorize a computer for Ms. MARSHALL, even
28 though her computer was inoperative. Ms. MARSHALL could not effectively perform her job

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND
PROPOSED ORDER      5.      CASE NO. C 08-02172 CW

without a computer. (2) Ms. Walker began assessing new admissions, which was Ms. MARSHALL's job. (3) Ms. Walker told Ms. MARSHALL she could no longer use the Pathways Hospice agency, which Ms. MARSHALL had been using and for which she had developed a good working relationship with. (4) Ms. Walker refused to allow Ms. MARSHALL to hire additional needed staff. (5) Ms. Walker terminated Issac Lopez, one of the witnesses who heard Ms. Walker publicly stated she did not like Ms. MARSHALL. (6) Ms. Walker's behavior forced Aleta Walker to quit (Aleta Walker and Ms. MARSHALL made the initial complaint regarding Mr. Garner to Ms. Schmidt). (6) At an August 6, 2007 meeting with Plaintiff Ms. Walker in a hostile manner stated, *"I know everyone thinks you are good at what you do, but I am NOT impressed."*, and *"I am watching you closely and I am not happy."*

Because of Ms. Walker's abuse and harassment, Ms. MARSHALL was soon hospitalized, and placed on medical leave. On August 23, 2007, while on medical leave, Ms. MARSHALL learned that the locks to her office had been changed, her voice-mail was changed, her name was removed from the outgoing messages, and her belongings were packed. She could no longer access her email.

Based on Ms. Walker's actions and attitude toward Ms. MARSHALL, Ms. Schmidt's past hostility and the fact she was locked out of her office, voice-mail and email, Ms. MARSHALL reasonably concluded that her working conditions at BROOKDALE were intolerable and would remain intolerable, and that she had been constructively discharged from her employment with BROOKDALE

3.  **The Principal Legal Issues Which the Parties Dispute:**

Plaintiff contends that she was subjected to retaliation, sexual harassment and tortious constructive discharge. Defendant contends that Plaintiff was not subject to any adverse employment action and was, thus, not subjected to retaliation. Defendant also disputes that any of the conduct reported by Plaintiff was sufficiently severe or pervasive to constitute sexual harassment as alleged. Moreover, Defendant has an affirmative defense to any claim of sexual harassment as alleged, given that Defendant acted to prevent and/or correct any further potential sexual harassment from

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER          6.          CASE NO. C 08-02172 CW

occurring. Defendant also maintains that Plaintiff's claim for tortuous constructive discharge will fail, as she voluntarily resigned from her employment with Defendant.

### 4. Motions:

As described above, Defendant removed this matter and Plaintiff challenged that removal by way of motion for remand. The Court ruled that removal was appropriate. There are no pending motions. Anticipated motions include:

Defendant:

Motion for Summary Judgment; discovery motions if needed to resolve discovery disputes; and any trial motions, including, but not limited to motions in limine.

Plaintiff:

Possible discovery motions if needed, and any trial motions, including, but not limited to motions in limine.

### 5. Amendment of Pleadings:

Defendant:

Defendant is contemplating filing a counterclaim against Plaintiff for fraud. Defendant is investigating false claims of expenses by Plaintiff and is evaluating its options with regard to such a counterclaim.

Plaintiff:

Plaintiff will seek leave to amend to include a cause of action for violation of the California Family Medical Leave Act, and to add Brookdale Living Communities, Inc. and Brookdale Senior Living, Inc.

### 6. Evidence Preservation:

Defendant:

Steps have been taken to obtain and preserve any electronic documents that exist for Plaintiff and other relevant witnesses, as identified by Defendant. Prior to time that Defendant had notice of Plaintiff's claims and her lawsuit, Defendant had no reason to preserve or maintain all electronic mail correspondence which may have pertained to this case. As such, there is a possibility that some e-mail may not still exist on Defendant's computer network. However, once Defendant

had notice of Plaintiff's claims and her lawsuit, Defendant issued an evidence preservation notice. Defendant has also collected other "hard copy" documents and relevant information. Defendant continues to investigate what electronic data and other documents are available.

Plaintiff:

Plaintiff's counsel needs to confer with Plaintiff regarding evidence preservation. Plaintiff MARSHALL is now residing in New York State and usually responds within a day. However, Plaintiff has had a family medical emergency and has not been able to communicate with counsel. Plaintiff will amend.

### 7. Disclosures:

The parties initially agreed to make their initial disclosures by August 5, 2008 in accordance with FRCP 26(a)(1)(C). However, the parties have recently stipulated to extend the time period do August 12, 2008, at noon. Therefore, the parties have not yet had the opportunity to assess whether there has been full and timely compliance with the initial disclosure requirements of FRCP 26.

### 8. Discovery:

**To Date:** Defendant has noticed Plaintiff's deposition for October 22 and 23, 2008 in San Francisco. The parties agreed during the Rule 26(f) Conference that Defendant would provisionally notice Plaintiff's deposition for two days because Plaintiff now resides in New York, making it more cost effective to complete the deposition in one attempt, rather than on different dates requiring Plaintiff to travel twice. It is unknown whether two days will actually be required for Plaintiff's deposition.

**Anticipated Discovery:**

The parties' proposed timing and sequence of discovery is as follows:

- Initial Disclosures to be made by August 12, 2008.
- Joint CMC Statement, including discovery plan to be filed by August 5, 2008.
- Deposition of Plaintiff to take place on October 22 and 23, 2008. (If two days are required.)

- An initial first round of discovery to be propounded and answered prior to Plaintiff's deposition. It is anticipated that this will include written requests for production, requests for admission and interrogatories.
- The parties intend to notice and take primary depositions in late October/early November 2008. Note: defense counsel is not available during September (trial) and late November/early December (prepaid vacation).

**Proposed Discovery Plan:**

(A) Initial disclosures to be made by August 12, 2008 and to be supplemented as additional information is discovered through further investigation and the discovery process.

(B) The subjects on which the parties are likely to seek discovery include:

**Subjects:**
- Plaintiff's alleged complaints against John Garner.
- Defendant's response to those complaints.
- Plaintiff's job performance.
- Plaintiff's expense claims.
- Plaintiff's relationship with Linda Walker.
- Plaintiff's reason for resignation.
- Plaintiff's efforts to mitigate, including job offers received, accepted and declined, reasons for leaving subsequent employment and all other evidence related to mitigation.

**When:** The parties have agreed to conduct a first round of written discovery in advance of primary depositions to take place in October and early November.

**Phases:** The parties will reassess the need for further discovery after completion of the initial first round of discovery as described above.

(C) There are no disputed issues relating to disclosure or discovery of electronically stored information at this time. The parties have agreed that the form in which electronically stored information should be produced is as hard copies, so far as that is practicable.

    (D)    The parties have agreed that they need not produce a privilege log of attorney-client correspondence, which is privileged.

    (E)    The parties have agreed to limit the initial primary depositions to three for each party. This shall not limit the noticing and taking of further depositions, within the limitations imposed by the local and federal rules, at a later date.

    (F)    Other Orders: Defendant will require a protective order to protect any confidential personnel information, proprietary training, educational, etc. materials.

**9.    Class Actions:**

Not applicable.

**10.    Related Cases:**

Not applicable.

**11.    Relief Sought:**

<u>Plaintiff Statement:</u>

Discovery is ongoing, and Plaintiff MARSHALL has not yet calculated all damages. However, at this time Plaintiff MARSHALL estimates damages to be $1.7 million plus.

    (A)    **LOST WAGES**  -        **$729,223.**

Plaintiff MARSHALL's salary at BROOKDALE was $100,000 per year with the opportunity to earn a $10,000 yearly bonus. She received 10 vacation days and 5 sick days per year. There was also tremendous growth potential at BROOKDALE.

On April 23, 2007 she was appointed temporary Administrator of the Woodside Terrace facility, but was not given a salary increase. Plaintiff Marshall was qualified to serve as permanent Administrator of the Woodside Terrace facility, but was denied the permanent promotion, along with appropriate salary increase because of Defendant BROOKDALE's wrongful retaliation. Plaintiff MARSHALL is informed and believes that the appropriate salary was $114,000, along with at least a $10,000 per year bonus.

Hence as of April 23, 2007 Ms. MARSHALL's salary should have been increased to $9,500 per month, yet from April 23, 2007 - August 14, 2007 she only earned $8,333 per month. The equals **$4,668** in lost wages.

1   For approximately one month after August 14, 2007 Plaintiff MARSHALL was placed on disability because of Defendant BOOKDALE's actions. She earned 60% of the $8,333, or $4999. That comes out to an additional **$4,501** in lost wages, i.e. $9,500 - $4,999.

Plaintiff MARSHALL then went three weeks without any salary and sustained loss wages in the amount **$6,576**.[1]

For the next six months Plaintiff MARSHALL worked at Aegis Senior Living where she earned $80,000 a year, or $2834 less ($9,500 - $6,666 = $2,834). After six months that comes out to **$17,004** in lost wages.

Plaintiff MARSHALL now earns $100,000 at Birchwood Suites in New York. That is $14,000 less than what her salary should have been at Defendant BROOKDALE. She does not have bonus opportunities, which amounts to an additional $10,000 per year in lost earnings. Finally she does not have vacation or sick leave, which amounts to $6,570 per year. That comes out to $30,570 in yearly lost wages. At 42, Plaintiff MARSHALL could work another 25 years, making her total yearly lost wages **$703,110**.

While Plaintiff MARSHALL has medical benefits at her current employer, she does not have dental or vision, as she did with BROOKDALE. Plaintiff MARSHALL may retain an expert to calculate the value of Plaintiff's lost medical benefits.

(B)   MEDICAL BILLS -                                  **unknown at this time.**

Plaintiff is currently gathering all medical bills to provide through discovery.

(C)   MOVING COSTS -                                   **$4,000**

(D)   EMOTIONAL DISTRESS/ INCONVENIENCE               **$500,000**

(E)   PUNITIVE DAMAGES -                               **$500,000**

Plaintiff MARSHALL was harassed and/or retaliated against by John Garner, Linda Walker and Kari Schmidt who are all high level managers at BROOKDALE. As such punitive damages are appropriate.

(F)   ATTORNEY FEES AND COSTS:                         **$17,000 as of August 2008.**

---

[1] Contrary to Defendant's assertion Plaintiff did not turn down immediate employment after acceptance. Defendant BROOKDALE told Ms. MARSHALL's prospective employer that she was on medical leave, and Plaintiff MARSHALL was not hired.

Defendant Statement:

If liability is established, Defendant believes damages should be calculated on the bases of lost wages to the date of Plaintiff's first job offer only. This is a position that she was offered and accepted. The evidence will show that it was indeed Plaintiff who changed her mind about continuing with this employment. No "managing agent" has been identified and, therefore, there are no grounds for any claim for punitive damages. Plaintiff moved because she voluntarily resigned from her subsequent employment rather than being fired for harassment. Thus, there is no legitimate claim to any moving costs. If Defendant files a counterclaim for fraud, Defendant will seek damages for improperly paid expenses, interest and costs, as well as attorney fees.

**12. Settlement and ADR:**

The prospect for settlement is uncertain at this time. In accordance with ADR L.R. 3-5 the parties have stipulated to the Court's Early Neutral Evaluation ADR procedure. The parties anticipate that they will be better positioned to assess the possibility of negotiating a resolution after the first round of written discovery and after the primary depositions have been conducted. It is hoped that the Early Neutral Evaluation will help focus the parties on the respective strengths and weaknesses of their cases.

**13. Consent to magistrate judge for all purposes:**

Defendant has previously objected to assignment to a Magistrate Judge for all purposes.

**14. Other references:**

Defendant would be interested in the possibility of reference to binding arbitration. However, Plaintiff indicated that she was not willing to be referred to binding arbitration.

**15. Narrowing of issues:**

It is too early in the proceedings for the parties to meaningfully assess this possibility.

**16. Expedited schedule:**

The parties request that they be permitted to follow the proposed discovery plan outlined above.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER    12.    CASE NO. C 08-02172 CW

**17. Scheduling:**

The parties request that they are permitted to complete the proposed discovery plan before imposition of deadlines for designation of experts (if any), discovery cutoff, hearing of dispositive motions and trial. The parties agree that they will be in a better position to assess these issues after completing the proposed discovery. The parties request that a case management conference be set for mid December 2008 to discuss the status of the case and to set these deadlines at that time.

Note: Counsel for Defendant is unavailable throughout September 2008 due to a scheduled trial and is also unavailable from November 14 through and including December 8, 2008 due to a pre-paid and planned vacation.

Plaintiff's counsel is unavailable September 19, 2008, October 17, 2008, December 8-12, 2008 and from December 22, 2008 through February 1, 2009.

**18. Trial:**

Plaintiff is requesting a jury trial. The parties have agreed that the expected length of trial is likely to be two (2) weeks.

**19. Disclosure of non-party interested entities or persons:**

Defendant complied with Civil Local Rule 3-16 at the time this case was removed to federal court.

**Defendant's certificate of Interested Parties:** Defendant is a wholly owned subsidiary of Brookdale Living Communities Inc., which is a wholly-owned subsidiary of Brookdale Senior Living Inc. The sole member of Defendant is Brookdale Living Communities Inc. Funds managed by Fortress Investment Group, LLC own more than 10% of the shares of Brookdale Senior Living, Inc. No other publicly held company owns more than 10% of the stock of either Brookdale Provident Management, LLC, Brookdale Living Communities Inc. or Brookdale Senior Living Inc.

**Plaintiff's certificate of Interested Parties:** Plaintiff does not have any certificate of Interested Parties to provide in this matter.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER    13.    CASE NO. C 08-02172 CW

20. **Any other matters that would facilitate disposition of the matter:** The parties are not aware of any other matters that would facilitate disposition of this matter at this time.

Dated: 8/5/ , 2008

ROBERT M. LUBIN
JOSEPH CAMENZIND, IV
LAW OFFICES OF ROBERT LUBIN
A Professional Corporation
Attorneys for Plaintiff
TAMMY MARSHALL

Dated: August 5 , 2008

PAUL S. COWIE
MICHELLE R. BARRETT
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
BROOKDALE PROVIDENT
MANAGEMENT, LLC

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER     14.     CASE NO. C 08-02172 CW

## CASE MANAGEMENT ORDER

The Case Management Statement and Proposed Order is hereby adopted by the Court as the Case Management Order for the case and the parties are ordered to comply with this Order.

In addition, the Court orders:

Dated: _____                    _____
                                                                          HON. CLAUDIA WILKENS

Firmwide:86110526.1 051918.1024

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

JT. CASE MANAGEMENT STATEMENT AND PROPOSED ORDER          15.          CASE NO. C 08-02172 CW